# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | |
|---|---|
| Abbey Beemer, Individually and on Behalf of All Others Similarly Situated,<br>    Plaintiff,<br><br>  v.<br><br><br>Clarendon County,<br>    Defendant. | CA: 0:22-CV-01145-DCN<br><br><br><br>**MEMORANDUM IN SUPPORT OF**<br><br>**DEFENDANT'S MOTION**<br><br>**FOR SUMMARY JUDGMENT** |

This is a Fair Labor Standards Act action brought by Ms. Abbey Beemer, individually and on behalf of all others similarly situated (hereinafter, "Plaintiff" or "Ms. Beemer") against Clarendon County, a political subdivision of the State of South Carolina (hereinafter, "Clarendon". "the County" or "Defendant") on April 8, 2022. Plaintiff alleges that she was not paid for overtime for hours worked in violation of the *Fair Labor Standards Act of 1938,* as amended, 29 U.S.C. § 201 *et. seq.* ("FLSA"). Clarendon County prays the Court will grant its Motion for Summary Judgment due to the absence of any dispute as to any issue of material fact that Clarendon County did misclassify Plaintiff as (1) the Plaintiff cannot prove that the County failed to pay overtime for hours worked, in violation of the FLSA, because it did not; and (2) the Plaintiff cannot show that the County mischaracterized Plaintiff as a salaried employee, because it did not. Thus, the Court should grant the County's Motion for Summary Judgment because there is no dispute to any issue of material fact and the County is entitled to judgment as a matter of law.

## PROCEDURAL HISTORY

Through her legal counsel, the Plaintiff, Abbey Beemer, filed a Complaint for Collective Action (the "Charge") [ECF No. 1 Complaint for Collective Action] in the U.S. District Court, Charleston Division, on April 8, 2022, alleging the County failed to pay overtime where due and that the County willfully and intentionally mischaracterized Plaintiff (and others) as exempt rather than non-exempt, in violation of The Fair Labor Standards Act, as amended, 29 U.S.C. § 201 *et. seq.* ("FLSA"). The County did file an Answer on July 26, 2022. [ECF No. 6, Answer of Defendant Clarendon County]. The Scheduling Order was issued by the Court shortly thereafter. [ECF No. 8, Scheduling Order]. The Scheduling Order was subsequently amended on April 6, 2023. [ECF No. 11, Scheduling Order]. Due to a number of personnel changes in leadership roles at the County, a delay in response to the Plaintiff's discovery requests did occur, and Plaintiff did file a Motion to Compel against Clarendon County. [ECF No. 17, Motion to Compel]. This Motion to Compel was granted [ECF No. 18, Order on Motion to Compel], and the County did provide an additional response in compliance with the Order. [ECF No. 19, Reply to Response to Motion]. An additional amendment was made to the Scheduling Order on November 4, 2025. [ECF No. 20, Scheduling Order]. The Parties engaged in mediation on December 30, 2025, but mediation did result in an impasse and so the matter appeared to be headed to trial. A notice of hearing was sent to the Parties by this Court for preparation of the selection of a jury. [ECF No. 21, Notice of Hearing]. Due to significant health issues with a family member of the County's Attorney, this Court gracefully cancelled the hearing and permitted the submission of dispositive motions. [ECF No. 27, Notice of Cancellation of

Hearing]. The Parties have discussed the probability that there are questions of law and not of fact in this matter and thus it should rightfully be decided before the Court.

Discovery has been completed and mediation resulted in an impasse. Defendant believes that it has engaged in reasonable good faith efforts to determine whether this matter bears merit and is satisfied that it does not. Therefore, Defendant respectfully submits the following argument for the grant of Summary Judgment in this matter.

## STATEMENT OF THE FACTS

Ms. Beemer was hired by Clarendon County on December 22, 2020 as a part time, at-will employee in the Fire/Rescue Department in the position of Part Time Fire Paramedic. (Exhibit 1, Letter from Linda Lemon, Human Resource Director to Ms. Abbey Beemer). Ms. Beemer became a full time, at-will employee of the same department, in the position of Paramedic/Firefighter 1, on July 8, 2021. (Exhibit 2, Terms of Employment). The County combines the efforts of fire and rescue in one department and all employees are expected to perform the duties of each effort. The County provides training for such dual duties. County ambulances are outfitted with firefighting equipment, including without limitation, turnout gear and suppression breathing equipment. The term "turnout gear" is used by firefighters to describe their protective clothing and equipment. In most cases, the term is applied only to the helmet, jacket, pants, and boots worn by firefighters when out on call but may also refer to specialized equipment such as hazmat suits. Basic turnout gear consists of garments which are comfortable enough to allow free movement and which offer protection against heat, flames and embers, falling debris, and water. Specialized gear includes self-contained breathing apparatus, communications devices, and suits which allow firefighters to work with hazardous substances

3

or in close proximity to extreme heat. It is clear that the inclusion of such gear anticipates the participation of those on the ambulance in firefighting when necessary. On Ms. Beemer's Personnel Contact Sheet, it is noted that Structural Fire Gear was issued to her. (Exhibit 3, Personnel Contact Sheet). While Fire/Rescue employees riding on an ambulance are trained in rescue skills, (Exhibit 4, Training Records), they are also trained on fire operations. (Exhibit 5, Fire Training Records). In reviewing Ms. Beemer's Fire Training Records, it is a fact that she has attended over eighty (80) training sessions that are fire-related. (Exhibit 5, pg. 1-14). Many of these sessions were conducted and certified by the South Carolina Fire Academy. (Exhibit 5, pg. 24-25, 31-34).

On August 1, 2024, Ms. Beemer was elevated to the position of Lieutenant/Fire Fighter 2, and received an increase in salary of $10,411.00. (Exhibit 6). Ms. Beemer was eligible for this promotion and salary increase due to the training that she had completed. Certainly, Ms. Beemer was aware of the change in position, and certainly was aware of the change in wages. Employees who were uncomfortable engaging in firefighting activities were able to decline such a promotion, and the Fire Chief would have notified Human Resources of the decrease in pay. Ms. Beemer didn't do that; she accepted the increase in pay.

## **ARGUMENT**

Summary Judgment is appropriate only when "there is no dispute as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P.56(a); *Evans v. Techs. Applications & Service Co.,* 80 F.3d 954, 958 (4th Cir. 1996). A material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). While courts must take

4

special care when considering a motion for summary judgment in a discrimination case because motive is often the critical issue, summary judgment disposition remains appropriate if the plaintiff cannot prevail as a matter of law. *Evans,* 80 F.3d at 958-59. Summary judgment in favor of the County is appropriate in this matter since Plaintiff simply cannot prevail as a matter of law because she cannot prove her allegations that the County was not properly paying her. It is clear that Plaintiff accepted a significant raise in pay, with a full understanding that she was a Paramedic/Firefighter. Her title included the phrase, "FF1" and then "FF2". Plaintiff continued to go to training classes that were specific to firefighters, and the ambulance had firefighting gear on it.

The only issue in this matter is not whether Plaintiff was paid properly in accordance with FLSA where her hours were more than forty (40); the issue is should she have been paid in accordance with FLSA under 29 U.S.C. §207(k) ("Section 207(k)"), and as an employee in fire protection services. This is a matter of law and not a matter of fact. It is the position of the County that Ms. Beemer was being paid properly, and was an employee in fire protection services.

To utilize Section 207(k) of the FLSA, which allows an employer to use a 212 hour, 28-day work schedule (53 hours per week), the County would have to qualify under the exemption. The exemption states:

> *No public agency shall be deemed to have violated subsection (a) of this section with respect to the employment of any employee in fire protection activities…if (1) in a work period of 28 consecutive days the employee receives for tours of duty which in the aggregate exceed the lesser of (A) 216 hours, or (B) the average number of hours (as determined by the Secretary pursuant to section 6(c)(3) of the Fair Labor Standards Act Amendments of 1974) in tours of duty of employees engaged in such activities in work periods of 28 consecutive*

*days…compensation at a rate not less than one and one-half times the regular rate at which he is employed.[1]*

So employees in fire protection activities working in a 28-day work period, the exemption provides for overtime payment for all time worked beyond 212 hours each 28 days. Plaintiff denies that she is an employee working in fire protection activities. We believe all signs point otherwise.

The definition of the standard of what is an employee within fire protection activities comes from 29 U.S.C. §203(y) )("Section 203(y)" is:

> *Employee in fire protection activities means an employee, including a firefighter, paramedic, emergency medical technician, rescue worker, ambulance personnel, or hazardous materials worker who (1) is trained in fire suppression, has the legal authority and responsibility to engage in fire suppression, and is employed by a fire department of a municipality, county, fire district, or State; and (2) is engaged in the prevention, control, and extinguishment of fires or response to emergency situations where life, property, or the environment is at risk.*

We have a clear-cut example of this in *Huff v. DeKalb County,* 516 F.3d 1273 (11th Cir. 2008). In *Huff,* a Georgia county fire chief asked his paramedics to become certified in firefighting and then change their job classification to reflect fire suppression duties. They were then assigned to comply with Section 207(k). Several of the paramedics sued, claiming they never actually engaged in fire suppression duties and thus were not exempt. The court held that the paramedics had the responsibility to engage in fire suppression even if they were never called to perform such duties. The Court analyzed the definition cited above, breaking Section 203(y) down into five components:

1. The employee must be trained in fire suppression;

---

[1] 28 C.F.R. §553.230(c).

6

2. They must have the responsibility to engage in fire suppression;
3. They must have the legal authority to engage in fire suppression;
4. They must be employed by a fire department of a municipality, county, fire district, or State;
5. They must be engaged either (i) in the prevention, control, and extinguishment or fires, or (ii) in the response to emergency situations where life, property, or the environment is at risk.

The Court in *Huff* held that the county met all five components and thus were subject to Section 207(k). The employees in *Huff,* much like our Plaintiff, argued that they do not fall under the exemption because they had never engaged in fire suppression. The Court responded that this was not a requirement of the FLSA. The criteria did not require actual engagement in fire suppression. There was not statutory requirement that there be ANY level of actual engagement in fire suppression. Only that they be prepared to engage. They be authorized and responsible.

Another example of this position comes from the Fourth Circuit. *Heather Nicole Davis v. Jasper County,* C.A. No. 9:21-cv-03964-BHH (unpublished opinion), carries the same opinion as *Huff.* Ms. Davis filed an action against Jasper County alleging very similar complaints as we see here against Clarendon County. It is important to note the parallel between *Davis* and the matter at hand. Jasper County has a county-wide combination of fire and rescue service, and Ms. Davis was employed by that service. She was a certified firefighter and paramedic, and her official title was "Firefighter/Paramedic". Ms. Davis claimed that only a "sliver" of her job was fire-related, and alleged that she was not being paid properly for her overtime worked. Jasper County did utilize Section 207(k), and the County did state that that was proper since Ms. Davis met the definition of an employee in fire protection activities under the plain language of the FLSA. The Court considered this argument and relied upon *Huff* in their analysis, looking to the components

of Section 203(y) where, and employee must: (1) be trained in fire suppression; (2) have the legal authority to engage in fire suppression; (3) have the responsibility to engage in fire suppression; (4) be employed by a fire department of a municipality, county, fire district, or state; **and** (5) be engaged either (i) in the prevention, control, and extinguishment of fires, **or** (ii) in the response to emergency situations where life, property, or the environment is at risk. *See Huff v. DeKalb County, Ga.,* 516 F3d. 1273, 1279 (11th Cir. 2008). Plaintiff in the instant case does not dispute that she was employed as a Paramedic/Firefighter, that she was trained in fire suppression, that she had a legal authority to engage in fire suppression, and that she was employed by a fire department of a county. In fact, she accepted a promotion and substantial increase in pay in her role as Paramedic/Firefighter. She never requested a reasonable accommodation to not have to participate in firefighting activities. Plaintiff sought additional training for fire suppression and was afforded the ability to utilize such training. And she had the equipment on the ambulance every time it left the station. The Court in *Davis* reached the conclusion that Ms. Davis did indeed meet the criteria under numbers 1 and 2 of the definition.

Looking to the responsibility to engage component of the definition, the Court opined that the Fourth Circuit had not yet analyzed this issue but relied on a ruling by Judge Gergel in *Regan v. City of Hanahan,* No. 2:16-cv-1077-RMG, 2017 WL 2303504, at *3 (D.S.C. May 26, 2017), stating that the Court "need not conduct factor-by-factor analysis to determine whether Plaintiffs had the responsibility to engage in fire suppression" because "it is abundantly clear that they did." Many of the facts are similar to the instant case – this was a dual-function department and although most employees of the City claimed that they were "rarely assigned to the fire truck," but they knew that they were expected to engage in fire suppression. *Id.* at *2. Further

testimony in *Davis* rings familiar when compared to our matter since Ms. Davis stated that there were times she was asked to put on turnout gear, and that she carried it everywhere. She was also well trained in fire suppression having received her Firefighter Level II certification along with other certifications in hazardous materials operations. Judge Hendricks citing *Huff* stated that with regard to duty and responsibility, "[t]his "responsibility" is a forward-looking, affirmative duty or obligation that any employee may have at some point in the future." *See Huff,* 516 f.3d at 1281.

Clarendon County firmly believes that Plaintiff was aware of this responsibility and there is sufficient evidence of this: (1) There was always turnout gear on the ambulance; (2) Plaintiff on occasion would don the turnout gear; (3) She was well trained in fire suppression and hazardous materials operations; (4) She responded to both medical and fire calls; (5) When she accepted the elevation of rank to Lieutenant and the significant increase in salary, it was clear that she was also being elevated to Firefighter II; (6) She voluntarily sought out training sessions that were fire related, and (7) She was well aware that she could be called upon to perform fire suppression activities. Although most of the calls she responded to may have been emergency related and not fire related, the critical part of Section 203(y) is the simple word, "or". In *Davis,* the Court opines that if the requirement of a dual department of Paramedics and Firefighters was to actually engage in fire suppression while on an ambulance would contradict the nature of the word, "or". It requires that employees be engaged in either fire suppression **or** respond to emergencies, not both.

# CONCLUSION

The Defendant's Motion for Summary Judgment should be granted because the Plaintiff was clearly a Paramedic/Firefighter under the Fair Labor Standards Act definition. She met all the requirements, and then some. As a result, Defendant was in fact paying Plaintiff properly, and sometimes in excess of what the necessary and earned pay actually was. Section 207(k) is applicable to this Plaintiff and others like her who are employed by the County in the Fire/Rescue Service. It is the position of the Defendant that key components to the granting of Summary Judgment include, but are not limited to:

A. Section 203(y) definition of individuals considered to be involved "in fire protection activities" for purposes of the Section 207(k) exemption. Plaintiff meets the criteria under this definition.

B. The analysis of the word, "responsible", as held in *Huff* and *Davis* is important. Further, the ordinary meaning of the word, "responsible" includes being answerable or accountable, as for something within one's power or control.[2] At all times, Plaintiff was responsible to engage in either fire prevention **or** respond to emergencies.

C. While Plaintiff denies that she was a firefighter, she accepted a promotion and salary increase that clearly indicated that she was being classified as a Firefighter II, and was nonexempt.

D. While Plaintiff claims to have been paid as an Exempt employee, she did, in fact, receive overtime compensation.

---

[2] Random House College Dictionary Revised Edition, 1125 (1988), *citing from Davis v. Jasper County,* C.A. No. 9:21-cv-03962-BHH.

E.  There is no question of material fact in this matter.  This matter deals with questions of law only.

WHEREFORE, the Defendant prays this Court GRANT it's Motion for Summary Judgment as being just and proper.

Respectfully,

s/Joan Elizabeth Winters  
LAW OFFICE OF JOAN ELIZABETH WINTERS, d/b/a  
Winters Law Firm  
Federal Bar #9355  
105 Main Street  
Chester, South Carolina  29706  
803-581-8190  
803-581-8243 facsimile  
**ATTORNEY FOR DEFENDANT**

January 21, 2026