IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Abbey Beemer, | | C.A. No.: 2:22-CV-01145-DCN |
| | Plaintiff, | |
| v. | | |
| Clarendon County, | | **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| | Defendant. | |

Plaintiff Abbey Beemer ("Plaintiff") respectfully submits this Memorandum in Opposition to the Motion for Summary Judgment filed by Defendant Clarendon County ("Defendant").

## STATEMENT OF FACTS

Plaintiff was hired as a part-time fire paramedic in the Fire/Rescue Department of Clarendon County on December 21, 2020. (Exhibit 1, Plaintiff Affidavit ¶ 2, Attachment 1) While working part-time, Plaintiff was paid appropriately pursuant to Fair Labor Standards Act receiving overtime for all hours worked in excess of forty (40) in a one-week period. (*Id.*) Plaintiff was hired as a full-time "Paramedic/FF" on July 21, 2021. (Exhibit 1, Affidavit of Plaintiff ¶ 3, Attachment 2) At no time during her hire or in her promotion to full-time was it expressed to Plaintiff that she would need to fulfill firefighting duties. (Exhibit 1, Plaintiff Affidavit ¶ 4)

Plaintiff was told by Brad Gerfin, the former EMS Director that because of the recent merger between the Fire Department and EMS services, Plaintiff was not required to take fire training and be certified. However, if she wanted to become full-time she would have to go through fire recruit classes. Plaintiff expressed to Gerfin that she had no desire to fight fires, and she did not want to be assigned to any firefighting shifts. He informed Plaintiff that no one would be forced to fight fires if they were uncomfortable doing so. (Exhibit 1, Plaintiff Affidavit ¶¶ 5-6.)

Because Plaintiff wanted to become full-time and had Gerfin's assurances, Plaintiff had no issue with voluntarily taking the fire recruit class. Plaintiff was not paid by the County to attend

1

Firefighter 1 courses. Plaintiff was issued fire gear for the purposes of the recruit class only. (Exhibit 1, Plaintiff Affidavit ¶¶ 6-8)

When asked to sign Plaintiff's Terms of Employment, Plaintiff asked Tammy Rodvansky, a former Human Resources employee, about the verbiage that it said "Paramedic/Firefighter". Plaintiff expressed that she would not be doing any firefighting and Rodvansky's response was do not worry about it, it simply needs to be put that way into the system for PORS retirement. (Exhibit 1, Plaintiff's Affidavit ¶ 9)

Plaintiff's first paycheck after going full-time was short over 160 hours. Plaintiff approached her supervisors and HR about the discrepancy and asked why she was not paid overtime. They explained to Plaintiff that they were using the firefighter exemption. After this, Plaintiff took the issue to Chief Johnson to ask about the failure to pay accurate overtime. No effort was made to correct the inadequate overtime pay issue. (Exhibit 1, Plaintiff Affidavit ¶ 10-11)

Plaintiff was informed that EMS personnel must keep up their training hours and log them into "fire programs", but that this was for the sole purpose of the County's ISO fire rating. It was a requirement that all personnel had at least sixteen (16) hours a month for the ISO fired rating. (Exhibit 1, Plaintiff's Affidavit ¶13) Additionally, Plaintiff was required to do a monthly training medical in-service to keep her paramedic certification. (Exhibit 1, Plaintiff's Affidavit ¶ 14)

Each year firefighters were required to attend a live burn training as was required by the state. There was also a component of this training that was combined with medical in-service training. At the live burn for the firefighters, there would be a medical scenario involving a patient outside of the live burn that was involved in the fire scene scenario. Unlike true firefighters, Plaintiff never went inside a live burn and never put on gear at the live burn. Plaintiff strictly completed her medical IST scenario and assisted other groups through the medical scenario or took the vitals of firefighters before they entered the fire and when they came out of the live burn.  Plaintiff never performed any firefighting duties at the live burn and Plaintiff did not put on fire gear. (Exhibit 1, Plaintiff's Affidavit ¶15-16)

At no time did Plaintiff fight fires for Clarendon County. (Exhibit 1, Plaintiff's Affidavit ¶12) Plaintiff has never been scheduled or assigned to a fire truck or station. All of Plaintiff's schedules show her on a medic unit under EMS or the medical captain position on the QRV. Plaintiff was not allowed to be scheduled anywhere except EMS positions as noted in her ALADTEC user profile. (Exhibit 1, Plaintiff's Affidavit ¶ 17-18, Attachment 3)

Plaintiff was not allowed to drive a fire engine or pump an engine. While Plaintiff took the classes, Plaintiff was never allowed to do those duties with my department. Plaintiff has never driven a fire engine or pumped an engine or responded to a structure fire to fight fire. To be able to drive a fire engine, Plaintiff would have had to obtained driver operator training which she never did nor was required to do so. (Exhibit 1, Plaintiff's Affidavit ¶ 19)

EMS is dispatched to all structure fires for the purpose of civilians and firefighters potentially needing medical care. Plaintiff has never put on fire gear while on scene of a structure fire. Plaintiff would not be subject to discipline if she refused to suppress fires. (Exhibit 1, Plaintiff's Affidavit ¶¶ 19-20) Plaintiff has never worn fire gear at a fire scene. Plaintiff has never put on turn out gear and entered a structure fire. Plaintiff has never filled the role of an incident commander at a fire scene. Plaintiff cannot train firefighters. (Exhibit 1, Plaintiff's Affidavit ¶ 21)

Plaintiff does not hold a Firefighter Level II Certification necessary to fight fires in SC pursuant to the South Carolina Fire Portal. (Exhibit 1, Plaintiff's Affidavit ¶ 22)

Defendant asserts that Plaintiff had requisite gear for firefighting which is not true. Extrication gear is required by DHEC to have on an ambulance. This includes a helmet and gloves. It was not until over a year after this lawsuit was filed that the turnout gear policy was instituted, Instead of using turn out gear to fire fires like true firefighters, EMS was instructed only to use extrication gear to assist with the extrication of someone who is injured, for instance, in a vehicle accident. If there is no injury, extrication duties are left to the firefighters on the scene. (Exhibit 1, Plaintiff's Affidavit ¶ 23)

Importantly, there is no Self-contained Breathing Apparatus (SCBA) equipment or breathing apparatus on an ambulance, which are critical pieces of equipment to fight fire. Further, some ambulances in other counties have been issued a water can which is a type of fire extinguisher. Defendant's ambulances do not have water cans. (Exhibit 1, Plaintiff's Affidavit ¶ 24)

Plaintiff was promoted to medical Lieutenant a little over a year ago and was given the requisite position description for the position. The job description specifically states Plaintiff's title is "Lieutenant – Paramedic". The only mention of anything related to firefighting is that Plaintiff is required to have Certification from the South Carolina Fire Academy. Apart from that there are no mentions of any firefighting-related functions as a part of the job. (Exhibit 1, Plaintiff's Affidavit ¶ 25, Attachment 4)

Contrary to the County's assertion, Plaintiff was never called a Firefighter 2, because to be able to be a Firefighter 2 for Clarendon County you have to have completed aerial operations and be checked off to drive and pump a fire engine which Plaintiff did not have. (Exhibit 1, Plaintiff's Affidavit ¶ 26)

This action was filed April 8, 2022. (Docket Entry No. 1)[1]

## **LEGAL STANDARD**

A court may grant summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate only where "it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987). The court must consider the evidence before it in the light most favorable to the non-moving party, and the

---

[1] Plaintiff attests that Defendant's Procedural History as outlined in its Motion for Summary Judgment is accurate.

moving party has the burden of showing absence of any genuine issue of material fact. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). All justifiable inferences are to be drawn in the Plaintiff's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). When the defendant is the moving party, the defendant must identify the parts of the record that demonstrate that the plaintiff lacks specific evidence. *Miller v. CP Chemicals, Inc.*, 808 F. Supp. 1238, 1240 (D.S.C. 1992).

Moreover, the Fourth Circuit "ha[s] emphasized repeatedly the drastic nature of the summary judgment remedy and ha[s] held that it should not be granted unless it is perfectly clear that there are no genuine issues of material fact in the case." *Ballinger v. N.C. Agric. Extension Servs.*, 815 F.2d 1001, 1005 (4th Cir. 1987) (citing *Pierce v. Ford Motor Co.*, 190 F.2d 910, 915 (4th Cir. 1951)).

## **ARGUMENT**

The ultimate decision whether an employee is exempt pursuant to Section 203(y) of the FLSA is a question of law. *Singer v. City of Waco, Tex.*, 324 F.3d 813, 820 (5th Cir. 2003). "With respect to the underlying facts, the employer has the burden of establishing that an exemption applies by a preponderance of evidence." *Fraser v. Patrick O'Connor & Assoc., L.P.*, 954 F.3d 742, 745 (5th Cir. 2020)

Section 203(y) of the FLSA defines an "employee in fire protection activities as:

an employee, including a firefighter, paramedic, emergency medical technician, rescue worker, ambulance personnel, or hazardous materials worker, who-

(1) is trained in fire suppression, has the legal authority and responsibility to engage in fire suppression, and is employed by a fire department of a municipality, county, fire district, or State; and

(2) is engaged in the prevention, control, and extinguishment of fires or response to emergency situations where life, property, or the environment is at risk.

29 U.S.C. Section 203(y). Accordingly, to fall within the definition, an employee must: (1) be trained in fire suppression; (2) have the legal authority to engage in fire suppression; (3) have the responsibility to engage in fire suppression; (4) be employed by a fire department of a municipality,

county, fire district, or state; and (5) be engaged either (i) in the prevention, control, and extinguishment of fires, or (ii) in the response to emergency situations where life, property, or the environment is at risk. See *Huff v. DeKalb County, Ga.*, 516 F.3d 1273, 1279 (11th Cir. 2008).

Plaintiff does not dispute that she was trained in fire suppression, that she was employed by a fire department of a county, and that she engaged in the response to emergency situations where life, property, or the environment was at risk. Plaintiff disputes that she had the legal authority to engage in fire suppression and that she had the responsibility to engage in fire suppression.

I. **Plaintiff Did Not Have the Legal Authority to Engage in Fire Suppression.**

In Defendant's Motion for Summary Judgment, Defendant falsely claims that Plaintiff does not dispute that she had the legal authority to engage in fire suppression.[2] In fact, Plaintiff lacked several of the key qualifications to be able to engage in fire suppression. While Plaintiff does not dispute she took the base level fire recruit training, she does dispute that she fulfilled other requirements necessary by the state to be able to engage in fire suppression.

First, every year firefighters must engage in a live burn training as required by the state. As a part of the live burn, firefighters must enter a live structure fire. (Exhibit 1, Plaintiff's Affidavit ¶¶ 15-16) Plaintiff never put on fire suppression gear at these trainings and never entered a structure fire. (*Id.*) There was a second strictly medical component to this exercise which Plaintiff did participate in, which would not meet the burden of the live fire training as required by the State because Plaintiff did not engage in fire suppression. (*Id.*)

Second, Plaintiff has taken courses for training to obtain a Firefighter Level II Certification but is not cleared for this certification through the South Carolina Fire Portal. (*Id*. ¶ 22) This certification is required to be able to enter a structure fire.

---

[2] Defendant's Motion for Summary Judgment cites only a few exhibits. The Motion is unsupported by sworn testimony of any kind and provides many false statements of fact that are self-serving and conclusory without the backing of true testimony.

Third, Plaintiff does not have the legal authority to drive a fire engine and has never done so. To be able to drive a fire engine, Plaintiff would have had to obtain a driver operator training, which she has never done nor has been required to do so. (Exhibit 1, Plaintiff's Affidavit ¶ 19)

Based upon the foregoing, it is clear that there is a question of fact as to whether Plaintiff has the legal authority to engage in fire suppression.

## II.     Plaintiff Does Not Have the Responsibility to Engage in Fire Suppression

Several circuits, including the Third, Eight, and Ninth Circuits have held that the responsibility component of 203(y) requires "some real obligation" for fire suppression. *See Lawrence v. City of Phila.,* 527 F.3d 299, 312 (3d Cir. 2008); *Zimmerli v. City of Kansas City, Mo.,* 996 F.3d 857 (8th Cir. 2021); *Cleveland v. City of Los Angeles,* 420 F. 3d 981 (9th Cir. 2005)

As to the question of whether Plaintiff had the responsibility to engage in fire suppression, Plaintiff's claim most closely aligns with *Douglas Patterson, et al v. Dallas/Fort Worth International Airport Board*, 490 F. Supp. 3d 1034 (N.D. Tex. 20210. Similar to Plaintiff's matter, EMS workers for the airport were required to hold TCFP certifications in structure protection and aircraft rescue firefighting. *Douglas* at 1040.

Similar to Plaintiff, *Douglas* Plaintiffs did not and were not asked to perform any fire suppressions activities while working in the EMS division during the three years prior to filing suit. (*Id.* at 1041) Instead, "plaintiffs provided medical services and were assigned to Mobile Intensive care Unit (MICU) or Trauma Unit 611, which was used for mass casualty incidents and carried medical and trauma supplies." (*Id.*) MICU and Trauma Unit 611 did not carry equipment associated with fire rescue or fire suppression. (*Id.*) Plaintiffs in *Douglas* had bunker gear which consisted of firefighting coat, pants, gloves, boots, a helmet and a hood and a custom fit mask designed to be connected to a Self-Contained Breathing Apparatus (SCBA). However, there were no SCBAs kept in the MICU or Trauma Unit 611. In a typical firefighting response SCBAs would need to be issued to any firefighter dispatched to a scene. (*Id.*)

7

Here, Plaintiff's ambulances also did not carry equipment associated with fire rescue or suppression. Plaintiff's ambulances were required to carry extrication gear but that gear was insufficient to fight fires. The gear lacked SCBA necessary to engage in fire suppression or to enter a structure fire. (Exhibit 1, Plaintiff's Affidavit ¶ 24) The ambulance also did not contain a water can or a type of fire extinguisher. (*Id.*) Like the Plaintiff's in *Douglas*, Plaintiff could not have engaged in fire suppression without the required SCBA.

Similar to *Douglas*, Plaintiff does not dispute that she responded to responded to fire scenes, but it was never to engage in fire suppression or was expected to engage in fire suppression.

*Douglas* also parallels with Plaintiff's claims in that the Plaintiff's in *Douglas* were issued a Standard Operating Procedure (SOP) which addressed the policies, procedures, and responsibilities of the EMS division, which was "established to provide profession emergency medical services to patrons, employees, and tenants of the airport." The SOP related to providing and reporting on medical services including, among other things, maintaining treatment and rehabilitation areas and transporting patients in the event of structure fires, hazardous materials incidents, and aircraft alerts. *Douglas* at 1042. The SOP does not contain any procedures or responsibility related to fire suppression activities. Consistent with the SOP, the mission of the EMS division was to provide exceptional prehospital medical care. (*Id.*)

Similarly, Plaintiff was provided a position description. The Summary Objective of the position states "The purpose of this position is to provide prehospital medical care through the County 911 system." As in *Douglas*, the position description mentions no fire suppression duties. (Exhibit 1, Plaintiff's Affidavit ¶ 25, Attachment 4) Further, the position title is "Lieutenant – Paramedic", not Firefighter.

As in *Douglas*, Defendant cannot provide any evidence where an EMS worker has been called to fight fires.

8

*Douglas* also provides a parallel with the current matter regarding live burn training. Per the FAA regulations there was a requirement that aircraft rescue and firefighters receive recurrent live fire drill training every twelve months. *Douglas* at 1043. The Plaintiffs in *Douglas* did not receive the training because they were not a part of the "frontline units". (*Id.*) Here, Plaintiff also did not participate in a live burn exercise except to provide only medical care pursuant to her normal EMS duties.

With regard to the responsibility component of the exception, *Cleveland v. City of Los Angeles*, is also on point with the matter at issue. 420 F.3d 981 (9th Cir. 2005) The Ninth Circuit determined that cross-trained firefighter paramedics had no responsibility to engage in fire suppression under section 203(y) when they were not regularly dispatched to fire scenes, did not carry firefighting equipment and were not expected to wear protective gear, and were expected only to perform medical services. (*Id.* at 990)

As in *Douglas*, neither the Defendant's declaration that Plaintiff had the responsibility to engage in fire suppression, nor any of the other evidence shows the circumstances, other than the odd training exercise, under which Plaintiff might have been required to engage in fire suppression. *Douglas* at 1045. Instead, they were assigned to EMS duties. They were not dispatched to every fire incident and did not wear bunker gear when responding to calls. Most importantly, Plaintiff's position description makes no mention of fire suppression. (*Id.*) Nor is there any evidence that Plaintiff would have been disciplined for failing to engage in fire suppression. Without more Defendant have not met their burden to show that Plaintiff had the responsibility to engage is fire suppression.

III.     **Davis v. Jasper County Ruling is Distinct From Plaintiff's Matter**

Defendant cites unpublished opinion *Davis v. Jasper County* as support for its Motion for Summary Judgment. 9:21-cv-03964. *Davis* is distinct from this matter, because Davis testified that a "sliver" of her job was fire suppression. Davis testified that 90% of her duties were performing medical functions. She responded to calls and was sometimes in the fire truck and

9

has driven the fire truck in response to a call. She testified that while on scene of structure fire, she filled the role of an incident commander and pump operator and that she had actually gone into a structure fire to engage in fire suppression. She testified that there were times that she was asked to put on her turn out gear – which she carried everywhere she went – and to assist with fighting the fire. Davis testified that she could count on two hands the number of times she had to fight fire, but if the need arose or she was asked while she was on scene performing medical functions, she could have, would have, and was expected to engage in fire suppression activities.

Davis also had a Firefighter Level II certification, which is necessary to fight structure fires. She also held certifications to allow her to drive the fire truck and to operate the fire pump.

Here, Plaintiff as outlined above, Plaintiff was not required to do any of the things that Davis did, nor did she hold the qualifications held by Davis. Therefore, Defendant's reliance on Davis to show that Plaintiff met the responsibility component of the exception is misguided. Davis has a distinct set of facts wholly different from that of this matter.

## IV.     Defendant Has Not Met its Burden of Proof

Based on the facts and legal precedent outlined above, Defendant has not met its burden that Plaintiff should be subject to the 207(k) exemption. Defendant cannot prove as a matter or law that Plaintiff had the legal authority to engage in fire suppression. Plaintiff did not possess the requisite qualifications and ongoing training to be able to legally engage in fire suppression.

Defendant cannot prove as a matter of law that Plaintiff had the responsibility to engage in fire suppression. Plaintiff was never required to fight fires. In fact, Plaintiff was not given the required equipment to even engage in fire suppression.

Plaintiff has provided enough evidence that there are questions of fact that should be tried and not determined at summary judgment.

**CONCLUSION**

Based upon the foregoing, Plaintiff requests a ruling from this Court that denies Defendant's motion for summary judgment in its entirety.

    Respectfully submitted,

s/Janet E. Rhodes
Janet E. Rhodes (Fed. ID 10521)
BURNETTE SHUTT & MCDANIEL, PA
P.O. Box 1929
Columbia, South Carolina 29202
Tel. (803) 904-7933
Fax (803) 904-7910
jrhodes@BurnetteShutt.Law

**ATTORNEY FOR PLAINTIFF**

Columbia, South Carolina

February 10, 2026